(No. 42532.—

*In re* JOHN J. SIMPSON, JR., Attorney, Respondent.

*Opinion filed January 25, 1971.—Rehearing denied March 31, 1971.*

John Cadwalader Menk, of Chicago, *amicus curiae.*

Raymond I. Suekoff, of Chicago, (Allen Kanter and Dennis M. Feinberg, of counsel,) for respondent.

Mr. Justice Kluczynski delivered the opinion of the court:

The Board of Managers and the Committee on Grievances of The Chicago Bar Association, as Commissioners of this court under Supreme Court Rule 751 (Ill. Rev. Stat. 1967, ch. 110A, par. 751) filed a report recommending that respondent, John J. Simpson, Jr., an attorney, be suspended from the practice of law for one year and until further order of this court. The recommendation was based upon the finding that respondent accepted fees from two clients for work which he failed to perform, and converted the funds to his own use.

This is the second time this matter is before the court. On January 18, 1968, this court confirmed a Report of the Commissioners recommending disbarment; however, on respondent's motion, that order was vacated, and the cause remanded on July 19, 1968, for further proceedings before the Grievance Committee. After hearings on July 25, August 8, and September 12, 1968, the Committee recommended a five-year suspension, which was reduced by the Board of Managers to one year and until further order of the court.

The evidence before the Commissioners relates to respondent's retention of clients' funds in a Kakavas divorce matter and an Arbuthnot security bond matter. On or about February 14, 1966, respondent was retained by

Mrs. Joan Kakavas to represent her in a divorce action. Respondent conferred with her stepfather in the early morning hours of February 14, had an extended conference with her that afternoon, and telephoned her husband that same day to induce him to readmit her into their family home. A fee of $225 for the divorce was agreed upon and the fee was paid in full by a check, which respondent picked up at the Kakavas home on February 17, 1966.

According to Mrs. Kakavas's testimony, respondent thereafter failed to communicate with her or return her numerous calls to his office and home. On March 30, 1966, she sent a registered letter to his office advising him of her efforts to reach him, that her search of the court records revealed no divorce action filed on her behalf, and that she wanted her money refunded. The registered letter was receipted "John J. Simpson by A. Van Brocklin." Respondent claimed the receipt was signed by the girl in his office, and he had no recollection of the letter. He also claimed he prepared some documents, but later destroyed the file; that he talked several times to Mr. Kakavas, who was to get a lawyer; and that he forgot to tell Mrs. Kakavas that if the matter was "straightened out" he would charge her only for the time spent. It is undisputed however, that respondent neither tendered nor refunded any part of the divorce fee; that he filed no divorce complaint on her behalf; that she never directed him to refrain from filing the divorce suit or to destroy her file; and that she and respondent never saw each other from February 17, 1966, until the first hearing on April 20, 1967, and at the supplemental hearings in 1968.

John F. McBride, secretary of the Committee on Inquiry, testified at the initial hearing that between April and July, 1966, he sent four letters to respondent at his office, requesting information regarding the Kakavas matter. The letters were neither returned nor answered. Respondent did not know whether he received them. He admitted that he did not do all the work on the case he should have done, but

explained that after March 1, 1966, he was inebriated a great deal of the time because of his own domestic troubles.

Evidence respecting the Arbuthnot matter was first presented at the hearing on June 29, 1967, which respondent did not attend despite two registered notices from the Grievance Committee. Mr. and Mrs. Arbuthnot testified that on April 27, 1966, respondent was retained as counsel to procure a surety bond for the transfer of a stock certificate wrongfully withheld from Mrs. Arbuthnot. Respondent advised her that the total cost would be $500, including his fee of $40 or $50. The Arbuthnots borrowed $500 and gave respondent a check for that amount. It is undisputed that he never obtained the bond. The only services he performed were the initial consultation with his client, preparation of a bond application, and a telephone inquiry relating to bond costs. It is also undisputed that no part of the $500 was repaid at the time of the original hearing, despite the Arbuthnots' repeated requests by phone, and in person, for the return of their money. The money was returned, however, by respondent's attorney more than two years later, in September, 1968, after the supplemental disciplinary hearings had begun.

At those hearings respondent testified that in August, 1966, to protect that money from his own creditors, he put it in an envelope in a safe in the home of a friend, D. C. Van Brocklin. Respondent had no receipt or record of the "safekeeping", and did not know what Van Brocklin did with the money. At one hearing respondent testified it was deposited in a bank, and at another hearing he assumed it was kept in the Van Brocklin safe. Even after he had ascertained he could not procure the surety bond, he made no effort to return the money to the Arbuthnots.

Respondent excepts to the Commissioners' report filed in this court September 5, 1969, contending that the findings are not supported by clear and convincing evidence; that the record showed only a fee dispute, lax business

methods and failure to exercise good judgment, none of which warrant suspension from practice; and that his previous good character should have been taken into consideration by the Commissioners.

To warrant suspension, the charges against an attorney must be proved by clear and convincing evidence (*In re Moore*, 8 Ill.2d 373; *In re Damisch*, 38 Ill.2d 195), but neither the Commissioners, nor this court, is required to be naive or impractical in appraising an attorney's conduct. (*In re Krasner*, 32 Ill.2d 121, 127; *In re Agin*, 45 Ill.2d 126, 130.) Semantics cannot convert respondent's conduct in the Kakavas divorce matter to a "fee dispute" as respondent claims. His unprofessional conduct was not merely failing to do the work he should have done, as he admitted, but, as the undisputed evidence shows, failing even to commence the divorce action, destroying the file, and remaining *incommunicado* from his client for over two years, while retaining the fee paid to obtain the divorce, as recited on the check itself. Respondent's own domestic difficulties and inebriation may explain why he did not respond to his client's messages, or to the letters from the Committee on Inquiry of the Chicago Bar Association, but it does not excuse such conduct. Nor does it condone his failure to appear before the second Committee hearing on July 19, 1967, after two registered notices were sent to him. "It is axiomatic that an attorney whose conduct is questioned must appear for examination under oath." *In re Krasner*, 32 Ill.2d 121, 126.

Respondent's excuse in the Arbuthnot matter, submitted when the cause was remanded to the Grievance Committee, that his client's money was held in safekeeping as a segregated cash item is not a new or novel one in disciplinary cases. (*In re Lingle*, 27 Ill.2d 459; *In re Ashbach*, 13 Ill.2d 411.) In rejecting a similar excuse in *In re Ashbach*, the court stated, at p. 419: "The claim of respondent that he segregated the proceeds of these settlements in cash in a steel filing cabinet, made disbursements therefrom with-

out any written record or account, an assertion which is common under such circumstances [citations], taxes our credulity. The acts of respondent were not merely slip-shod, they constituted a designed fraudulent conversion of his client's funds. Such action involves turpitude and warrants disbarment [citations] and the repayment of the funds under pressure does not mitigate the offense."

Even if we accept at face value respondent's account of the "safekeeping" of the Arbuthnot funds in Van Brocklin's safe without a receipt or record, such conduct was, as labelled in the *Lingle* case (*In re Lingle,* 27 Ill.2d 459, 463-464), "a covert method of handling a client's funds * * * highly unprofessional and one which can only create suspicion and harmful inference." Moreover, when this "slip-shod" safekeeping is viewed together with respondent's failure to make a conscientious effort to secure the surety bond, or answer the Arbuthnots' requests to return their money, or even keep appointments with them, and his retention of their money until after the disciplinary hearings began, it is patent that his conduct was tantamount to a "designed fraudulent conversion", rather than lax business methods. *In re Ashbach,* 13 Ill.2d 411, 419; *In re Ahern,* 26 Ill.2d 104, 108-109.

In our view the Commissioners' findings of fact were fully supported by the evidence. The conclusion is inescapable that in both the Kakavas and Arbuthnot matters respondent manifested not merely gross carelessness, but an intent to retain for his own use unearned fees, despite his clients' repeated requests for the return of their money. Such conduct involved moral turpitude. (*In re Ashbach,* 13 Ill.2d 411, 419; *In re Clark,* 8 Ill.2d 314, 319; *In re Ahern,* 26 Ill.2d 104, 109.) It is our opinion, therefore, on the basis of all the circumstances in this case that respondent should be suspended from the practice of law for one year, and it is so ordered.

*Respondent suspended.*