(No. 48893.—

*In re* EARL J. TAYLOR, Attorney, Respondent.

*Opinion filed May 20, 1977.*

Sidney S. Altman, of Chicago, for respondent.

Mary M. Conrad, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

MR. JUSTICE CLARK delivered the opinion of the court:

Pursuant to Supreme Court Rule 751 (58 Ill. 2d R. 751) and upon the filing of a complaint by the Administrator of the Attorney Registration and Disciplinary Commission, the Hearing Board of the Commission unanimously recommended a three-year suspension of the respondent, Earl J. Taylor. Its findings were unanimously approved by the Review Board. Taylor has been a member of the Illinois bar since 1958.

The Administrator filed a four-count complaint with the Hearing Board. The facts in count I are that on September 10, 1973, Taylor agreed to represent Charles Powers, who had been charged with aggravated battery in a

shooting incident. Powers paid Taylor $200 and testified that he told Taylor at that time that the hearing was scheduled for October 15, 1973, at the criminal court at 26th Street and California Avenue in Chicago. Powers said he reminded Taylor of the scheduled hearing in a phone call just four days before. Taylor never appeared, and he denied that Powers had fully informed him of the circumstances of the charge and the location of the hearing. Although admitting he accepted the $200 and did not appear at 26th and California, Taylor maintains Powers did not tell him Powers shot someone and so Taylor assumed it was a "gun case," which cases, he said, are normally heard at the court located at 11th and State streets. Taylor said he went there. Taylor never returned the $200, even upon Powers' request, although Taylor offered to do so at the disciplinary hearings. (Powers was discharged at the October 15, 1973, hearing.)

The second set of facts finds the respondent having accepted $75 to represent Mrs. Madeline Moon in initiating divorce proceedings. Taylor did not institute the action and failed to return the money even after repeated requests. Respondent apparently offered to return the money on the day of the hearing, but arrangements were never made. Mrs. Moon eventually won a divorce with the help of another attorney.

The Hearing Board found insufficient evidence against Taylor on the third count.

Count IV is based on charges by Lazora Corbin, whom Taylor successfully defended on a murder charge in 1967. She retained respondent in a wrongful death action, arising from the same occurrence and in which she was the defendant, on November 24, 1968, and paid him $50. On December 9, 1968, Taylor entered an appearance on her behalf and never withdrew his appearance. However, no answer or other pleading was ever filed by him. Mrs. Corbin paid Taylor $100 on February 9, 1969, and was told by Taylor, she testified, that he would "take care of

everything." There was no further contact between them, although she testified she attempted several times to reach Taylor. In May 1972, Mrs. Corbin was served with a citation to discover assets which was based on a default judgment of $30,000, entered May 14, 1971. After several attempts to reach Taylor, she went to another attorney, who negotiated a settlement of the judgment. She had to pay $3,500 plus a $300 fee for the attorney. Taylor never refunded the money he received. Taylor claims that he turned Mrs. Corbin's case over to an associated attorney who was more experienced in wrongful death actions and that he informed Mrs. Corbin of this. Yet Taylor admitted both that there is no writing evidencing this turnover and that he did not inform Mrs. Corbin, at the time she paid him $100 on February 9, 1969, that he had given the case to another attorney. Other facts in the record fail to support the respondent's views, and the Hearing Board found that Taylor had never turned the case over to the older, associated attorney, who is now deceased.

The Hearing Board found the charges in counts I, II and IV proved by the Commission, although it found no conversion of funds; it found that the money Taylor received constituted fees for his services. The Hearing Board determined that the respondent's actions were in violation of Canons 6 and 7 of the Illinois Code of Professional Responsibility (1970) (hereinafter Code): "A lawyer shall not *** [n]eglect a legal matter entrusted to him" (Code, DR 6—101(A)(3) (1970)); "A lawyer shall not intentionally *** [f]ail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2—110, DR 5—102, and DR 5—105" (Code, DR 7—101(A)(2)). (Those provisions, DR 2—110, 5—102 and 5—105, provide for the proper withdrawal of an attorney from employment.) The Hearing Board recommended that respondent be suspended for three years and until further order of the court.

The Review Board unanimously approved and affirmed the findings of the Hearing Board and the respondent filed exceptions with this court. 58 Ill. 2d R. 753.

The respondent's exceptions and brief raise several points, all of which can be briefly answered. Initially, he charges that the specific provisions of Canons 6 and 7 quoted above are unconstitutional and in violation of the attorney's oath. He adds nothing more specific than a general label of unconstitutionality. The Code, it is true, is not binding on the court. However, such canons of ethics have been found to "constitute a safe guide for professional conduct and an attorney may be disciplined for not observing them." *In re Krasner* (1965), 32 Ill. 2d 121, 129. See also *In re Broverman* (1968), 40 Ill. 2d 302, 306.

Respondent next contends that only moral turpitude, and not neglectful conduct, can be the basis for disciplinary proceedings. However, we find that neglect in the performance of an attorney's duties to a client can be sufficient to warrant disciplinary action. Suspension is a proper punishment "where a corrupt motive and moral turpitude are not clearly shown." (*In re Ahern* (1961), 23 Ill. 2d 69, 74 (where an attorney was censured for rendering inadequate services for fees received; *e.g.*, he failed to file a divorce proceeding).) Respondent's citation of the American Bar Association's "Informal Opinion" on DR 6–101(A)(3) is of only questionable benefit to his case. The examples listed in that "opinion" fail to exactly exemplify the charges against respondent. Even if they were precisely on point, they would be of dubious value because, as the "opinion" notes, additional facts would be necessary to ascertain a finding of neglect or of no neglect in each of the examples.

Taylor further contends that the Hearing Board committed several errors, among them: giving more weight to the testimony of complaining witnesses than to his testimony and considering the circuit court record of the wrongful death action against Mrs. Corbin since it had not

been "formally admitted but merely identified." "The credibility of witnesses is a question for the commissioners who hear and observe the witnesses." (*In re Bossov* (1975), 60 Ill. 2d 439, 441.) Accordingly, it is for the members of the Hearing Board panel to determine the weight to be given to the testimony of all witnesses. Respondent is also mistaken about the wrongful consideration of the record of the action against Mrs. Corbin. The record, in the instant matter, quite clearly shows that a certified copy of the record of the suit against Mrs. Corbin was admitted as Administrator's ·exhibit No. 8 for identification. Respondent's counsel specifically *did not object* when asked by the chairman of the panel of the Hearing Board if he objected to the admission of the Corbin record into evidence.

We find that respondent's actions show a pattern of consistent neglect: agreement to represent a client, acceptance of fees or money for costs, neglect in performing and completing legal services, and inaccessibility to a client. We further find that the Hearing Board correctly found the charges proved by clear and convincing evidence. *In re Simpson* (1971), 47 Ill. 2d 562.

In *Simpson,* the respondent, who was suspended for a year, accepted a $225 fee to file and complete a divorce action. He failed to do so, destroying the office file on that action and remaining inaccessible to the client. The respondent also received $500 ($40 or $50 of it as his fee) to· procure a surety bond for the transfer of a stock certificate. He never obtained the bond. (The money was returned two years later after the instigation of disciplinary hearings.) This court also noted in *Simpson* that although the respondent's domestic problems may have explained much of his conduct, it could not excuse such unprofessional actions.

In the instant case, respondent's acts were not dissimilar to the respondent's acts in *Simpson,* although there is one distinction: respondent here did not receive any money for any purpose (such as for a surety bond)

other than for fees and costs. For that reason, we disagree with the Administrator's view that there was a conversion of funds. Respondent was not given the money to hold for a specific purpose. It is clear the money was the consideration given for expected legal services.

Apart from the other contentions of Taylor, the only question is whether the recommendation of a three-year suspension is excessive or not. We find it is. The recommendations of the Hearing and Review Boards are deserving of much weight, but in the end their role is advisory. (*In re McCallum* (1945), 391 Ill. 400, 418; *In re Donaghy* (1946), 393 Ill. 621, 623.) It is clear that respondent acted with consistent neglect and deserves disciplinary action. However, it is not clear he acted out of corrupt or dishonest motives. He did not convert funds belonging to others. We do not believe that a three-year suspension would serve the interests of the public and the legal profession given the lack of overtly dishonest acts.

It is our opinion, therefore, on the basis of all the circumstances in this case, that respondent should be suspended from the practice of law for one year.

*Respondent suspended.*