(No. 53921)

*In re* FREDERICK CONGER HOPPER, Attorney, Respondent.

*Opinion filed June 26, 1981.*

320

Philip Schickedanz, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Rocci L. Romano and James O. Beavers, of Hershey, Bliss, Beavers, Periard & Romano, of Taylorville, for respondent.

MR. JUSTICE SIMON delivered the opinion of the court:

Frederick Conger Hopper, a licensed attorney, did not file Illinois income tax returns for 1974 and 1975. In 1977 he paid the taxes due for those years, along with interest and penalties. On April 17, 1978, he pleaded guilty to wilful failure to file his 1974 and 1975 State income tax returns in violation of sections 502 and 1301 of the Illinois Income Tax Act (Ill. Rev. Stat. 1977, ch. 120, pars. 5—502, 13—1301), and was fined $1,000.

On August 30, 1978, the Administrator of the Attor-

ney Registration and Disciplinary Commission filed a complaint reciting the conviction and charging Hopper with conduct tending to bring the profession into disrepute. Hopper's answer admitted the conviction but argued that there were extenuating circumstances which explained, though did not justify, his failure to file returns. He denied intending to bring the profession into disrepute.

The following evidence was presented to a hearing panel convened to hear the charges against Hopper. He was licensed to practice in 1967. He took a position with a private firm for a year, then became an assistant State's Attorney in Christian County. In 1969 he was made an assistant Attorney General with responsibilities for environmental-control litigation, and kept this job until 1976 when he ceased practicing. In 1977 he took up the study of anthropology. He presently owns and operates a bookstore and has no intention of resuming the practice of law.

A lifelong acquaintance of Hopper testified that the respondent was a good and competent lawyer who lacked business judgment and had always had some eccentricities. Hopper traced his problems back to his mother's death in 1969. He testified that the loss left him depressed and he has carried the depression ever since. His marriage suffered; from 1972 to 1975 domestic problems troubled him deeply. He and his wife separated in 1975 and were divorced in May 1977. Hopper was then treated by a psychiatrist, who diagnosed his problem as a depressive neurosis triggered by his mother's death and aggravated by his marital problems. The psychiatrist believed that Hopper's failure to file State income tax returns was related to the psychiatric problems.

Hopper testified that he failed to file his returns because at the time he lacked sufficient information to complete them. He procrastinated by putting the problem "on the back burner," intending to get around to filing but never doing so. The principal problem was the proper

valuation date and amount in the computation of capital gains on stock Hopper owned in several concerns. This stock returned him a handsome sum, enough to make his total income for the years involved $100,000 to $200,000. He had received the stock as gifts before the Illinois income tax went into effect, and it had no basis under the Federal tax laws. There was a different treatment for State tax purposes, and the stock's basis depended on the valuation date it was given. Hopper was aware that he could file for an extension of time in which to resolve the question and make his return, but he made no effort to do so.

The hearing panel found that the factual allegations of the Administrator's complaint were true. It held that Hopper's emotional depression was not a reasonable justification for failing to file the returns, and that his conduct tended to bring the legal profession into disrepute. It recommended that he be censured. The Review Board found that the pattern of failing to file State income tax returns reflected a pattern of conduct inconsistent with Hopper's assertions in mitigation. In the interest of uniformity, it recommended that Hopper's license be suspended for 1 year.

Initially we find that discipline is warranted in this case. There is no real dispute over what happened; respondent admits that he did not file State income tax returns in 1974 and 1975 and asks that the court show him mercy in picking the appropriate discipline. This court has held that failure to file income tax returns brings the legal profession into disrepute. (*In re Andros* (1976), 64 Ill. 2d 419, 424; *In re O'Hallaren* (1976), 64 Ill. 2d 426, 434; *In re Washington* (1975), 62 Ill. 2d 23; *In re Lambert* (1970), 47 Ill. 2d 223.) Although those cases involve Federal returns, it should make no difference when an attorney fails to file his State return, except where there is a reasonable explanation for why, after having filed the

Federal return, the attorney did not also file his State return.

Turning to what discipline is warranted, the parties quarrel over the amount of deference, if any, to be given to the hearing panel and the Review Board. As we have said before, the hearing panel's recommendation is advisory and not binding; yet, it is entitled to virtually the same weight as that of a trier of fact in a judicial proceeding. (*In re Wigoda* (1979), 77 Ill. 2d 154, 158.) Where the question is the credibility of witnesses, resolution of conflicting testimony, or other such fact-finding judgments, the hearing panel should be afforded a good deal of deference. There is great advantage, when finding facts, to hearing live witnesses instead of reading a cold record. Thus, the hearing panel's finding is entitled to great weight when the panel is acting as a trier of fact. But when it comes to imposing discipline, the final responsibility rests with this court. (*In re Wyatt* (1972), 53 Ill. 2d 44, 45.) The recommendations of the hearing panel and Review Board will be considered only as recommendations, as suggestions. This court is not required to adopt them.

The wisdom of that rule is illustrated in this case. The hearing panel and the divided Review Board differed on what the appropriate sanction was. The conflict might have been due to the differing concerns of each body. The Hearing Board is broken into three-member panels to hear individual cases. Local concerns and standards may temper the panels' judgments and recommendations. By contrast, there is but one Review Board, which sits as a whole for each case. It reviews the findings and disciplinary recommendations of hearing panels from across the entire State. It can readily be seen that uniformity of punishment must be one of its concerns. This court, in arriving at a disciplinary decision, must weigh the recommendations of the hearing panel and the Review Board with the institutional limitations of each body in mind. This court always re-

serves the right to administer such discipline as it sees fit. *In re Fumo* (1961), 22 Ill. 2d 429, 431.

The available sanctions include disbarment, suspension, and censure. "Where there is intentional fraud, disbarment is warranted. On the other hand, an attorney's lack of care would justify imposition of a sanction less than disbarment. Such sanctions are censure and suspension. The length of the suspension would, of course, depend on the circumstances of the case." (*In re Saladino* (1978), 71 Ill. 2d 263, 276.) Predictability and fairness require that there be a degree of consistency in the sanctions imposed for similar types of conduct (71 Ill. 2d 263, 275; accord *In re Clayter* (1980), 78 Ill. 2d 276, 283; *In re Levin* (1979), 77 Ill. 2d 205, 211), but each disciplinary case is unique, and all must be determined on a case-by-case basis.

Hopper does not presently intend to resume the practice of law. In oral argument he told this court that he filed his Federal income tax returns on time and paid the tax for the years involved. The taxes owing to the Internal Revenue Service on the Federal returns were substantially more than those due the State. His failure with respect to his State returns appears traceable both to his unwillingness to make the extra calculations the State return required to report his capital gains properly and to his neurosis. Otherwise, it would appear unlikely that, having paid the much higher Federal tax on the transaction, the respondent would seek to avoid paying the State tax. The deficiencies in respondent's business judgment seem to have been caused by a serious psychiatric ailment for which he has received successful treatment. There was no intent to discredit his profession, and no individual clients were prejudiced by Hopper's conduct. In light of the nature and background of Hopper's conduct, this case merits the exercise of the court's leniency. The appropriate sanction is therefore censure.

We reject the recommendation of the divided Review

Board that the respondent be suspended not because it was wrong to seek uniformity and consistency, but because the particulars of this case make it unlike *In re Andros* (1976), 64 Ill. 2d 419, or *In re O'Hallaren* (1976), 64 Ill. 2d 426, upon which the Review Board relied. In *Andros* the attorney suffered marital problems and the loss of a parent, but failed to file his Federal return. While Andros' problems caused him emotional strain, that cannot compare with the diagnosed psychiatric ailment with which Hopper was afflicted. In *O'Hallaren* again there were marital problems resulting in failure to file a Federal return, but not the sickness which in effect paralyzed Hopper and prevented him from filing his State returns. We follow the caveat laid out in *O'Hallaren:* "Determination of the discipline to be imposed requires an independent evaluation of the circumstances in each case. Because those circumstances vary substantially, sanctions which are appropriate in one situation may be inappropriate in another even though the underlying offense is similar or even the same." 64 Ill. 2d 426, 433.

*Respondent censured.*