(No. 58459.

*In re* JACK M. LEVIN, Attorney, Respondent.

*Opinion filed April 4, 1984.—Rehearing
denied June 4, 1984.*

UNDERWOOD and MORAN, JJ., dissenting.

Jerome Larkin, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte, of counsel), for respondent.

JUSTICE SIMON delivered the opinion of the court:

Respondent, Jack M. Levin, was charged by the Administrator of the Attorney Registration and Disciplinary Commission with neglect of various legal matters entrusted to him and with misrepresentation, dishonesty and deceit. The Hearing Board found respondent guilty of neglect, but not misrepresentation, and recommended his suspension from the practice of law for two years. The Review Board affirmed and approved the recommendation. The Administrator filed exceptions, urging that the respondent's conduct involved misrepresentation, and that he should be disbarred. Respondent also excepted, urging that the suspension recommended was too severe a sanction.

Respondent has been licensed to practice law in Illinois since 1960, and has been previously disciplined for

conduct similar to that alleged here. (*In re Levin* (1979), 77 Ill. 2d 205.) Respondent engages in a high volume, personal injury trial practice. During the time period involved here, respondent was an individual practitioner who accepted some cases directly from clients, but primarily accepted referrals from other lawyers of cases at all stages, from initiation to shortly before trial. Many of the cases involved dubious liability and small sums of money.

Respondent admits most of the allegations in the complaint. He admits neglect, but he denies any dishonesty, intentional misrepresentation, or any pattern of negligence. Instead, he attributes his conduct to the pressures of a high volume, high intensity practice where he assumed sole responsibility for everything he undertook, and to personal problems including marital difficulties and his daughters' health. Respondent claims to have made a number of changes in his practice to insure that this type of neglect cannot recur.

Count I involves respondent's representation of Manuel Santillanes for injuries suffered in a barroom altercation. Although respondent was employed within one month of the occurrence, suit was not filed until after the one-year dramshop and two-year personal injury statutes of limitations had expired, and proper service was never completed. One year after the complaint had been dismissed, respondent met with Santillanes and advised him that he was negotiating a settlement with the insurance company. Respondent did not tell Santillanes that the complaint had been dismissed. When Santillanes investigated and discovered the dismissal, he filed a malpractice suit against respondent. The resulting $10,000 judgment remains unsatisfied.

Count II involves respondent's representation of Christina Gomez, who was 10 years old when she fell through a hole in a fire escape which provided access to

the apartment in which she lived. Although respondent notified the realty company of his representation of Christina Gomez, no suit was filed. When asked about the case, respondent explained that he was trying to settle the matter out of court. After Josephine Carrera, Christina Gomez' mother, initiated disciplinary action, respondent wrote a letter indicating that he would no longer represent Christina Gomez and that she must file suit within two years. Carerra testified that she tried repeatedly to obtain the file from respondent in order to engage another attorney, but she was unsuccessful.

Count III involves a claim by Jarryl Monegain against his own insurer when that company refused to pay for the property damage arising from an automobile accident. The claim was referred by attorney David Feldman after he had been unsuccessful in negotiating with the insurer. When Monegain was unable to contact respondent, he reported this to Feldman. In writing and in person Feldman urged respondent to contact the client and to institute arbitration proceedings. When Feldman wrote respondent, confirming his belief that a lawsuit had been filed, respondent did not deny this understanding. No suit or arbitration proceedings were ever initiated by respondent; Feldman eventually filed a lawsuit.

Count IV involved a case referred by attorney Charles May. It arose from Matilda Nelson's difficulties when she was accused of shoplifting in a college bookstore. A civil suit against the store employees had already been filed by another attorney when respondent accepted the case. Respondent failed to comply with an order to file an amended complaint and the case was dismissed. He did not disclose the dismissal to the client, but indicated in response to her inquiries that he would resolve the matter. Respondent did not reply to many of the client's attempts to communicate with him. Nelson's claim is now barred.

Count V involves a wrongful death and dramshop claim referred by attorney Bernard Davis on behalf of Anne Fouts, whose husband was killed in an automobile accident. After respondent filed an appearance in the pending case, he was given 14 days to file an amended complaint, but never did. The complaint was dismissed when respondent failed to appear at a hearing. His motion to vacate the dismissal was never served on the defendants. The Fouts' claim is now barred. For more than two years respondent did not tell the client that her claim had been dismissed, but wrote letters indicating that he would be going to the courthouse to work on the case. There were some early settlement negotiations in which respondent urged Mrs. Fouts to reject a low offer. Davis has now settled Mrs. Fouts' malpractice claim against him, but respondent has not settled with her.

The final count involves the automobile accident claim instituted by Yvonne and Bernard Perry. The Perrys were referred to respondent by attorney Jack Marino, and their case was dismissed after they failed to appear at numerous scheduled depositions. The Perrys were aware of only two of these and had explained their inability to attend in advance. When the Perrys did not hear about a further deposition date and respondent did not return their calls, they filed a disciplinary complaint. Respondent now claims that he settled the case but he did not contact the Perrys. The Perrys eventually retained a new attorney, who settled the case for $1,500.

The first question is whether the Hearing Board erred in not finding dishonesty or misrepresentation in respondent's conduct. A finding by the Hearing Board of the Disciplinary Commission is entitled to the same weight as that of any other fact finder. (*In re Kink* (1982), 92 Ill. 2d 293, 301; *In re Feldman* (1982), 89 Ill. 2d 7, 10.) We give considerable deference to findings of fact by the Hearing Board, but we are not required to

accept them when the Board's conclusion is not established by clear and convincing evidence. (*In re Kink* (1982), 92 Ill. 2d 293, 301.) Although the Board found that there was no misrepresentation here, we conclude from the record that respondent's misconduct went beyond mere neglect. By failing to notify clients and referring attorneys that cases had been dismissed or that the statute of limitations had run, and instead reassuring them that he was working on the cases or that a suit had been filed, respondent misled both clients and attorneys into believing that he was actively protecting the clients' rights. Respondent's misstatements were designed to reassure clients and attorneys, leaving them sanguine with respect to the respondent's efforts on their behalf, so that they would not be alerted to take affirmative steps to protect the clients' interests before it was too late to do so. Relying on respondent's representations, clients were lulled into inaction with regard to the matter they had entrusted to the respondent and from seeking other counsel, and referring attorneys saw no reason to take an active part in filing or monitoring the progress of lawsuits on their clients' behalf. While respondent's remarks may not have been fraudulent, they were blatant misstatements which created a false sense of security in those who heard them, and they were inaccurate representations of what the respondent had actually done. Respondent does not deny making many of these misleading statements. Whatever respondent's intent when he made them, the result was irreparable prejudice to his clients' rights.

The remaining question is the appropriateness of the recommended disciplinary sanction of suspension for two years. We do not agree with the Administrator that respondent's actions warrant disbarment. On the other hand, respondent was guilty of serious breaches of the responsibility he owed his clients and other attorneys,

and we reject his suggestion that his conduct merits a lenient sanction such as censure or a very short suspension.

Culpable neglect of a client's affairs is misconduct sufficient to warrant disciplinary sanction. (*In re Chapman* (1983), 95 Ill. 2d 484; *In re Levin* (1979), 77 Ill. 2d 205; *In re Ahern* (1961), 23 Ill. 2d 69.) On many occasions, this court had found suspension to be an appropriate sanction for comparable neglect where corrupt motive and moral turpitude have not been shown. *In re Johnson* (1982), 93 Ill. 2d 441, 445; *In re Levinson* (1978), 71 Ill. 2d 486, 493; *In re Chapman* (1978), 69 Ill. 2d 494, 501; *In re Taylor* (1977), 66 Ill. 2d 567, 571; *In re Ahern* (1961), 23 Ill. 2d 69, 74.

Our attorney disciplinary proceedings are designed to safeguard the public and maintain the integrity of the legal profession. (*In re Levin* (1979), 77 Ill. 2d 205, 211.) In order that this court fulfill those goals, it is important that there be uniformity in the sanctions afforded to different attorneys (*In re Clayter* (1980), 78 Ill. 2d 276, 283), and also that each case be carefully evaluated on its own merits. *In re Hopper* (1981), 85 Ill. 2d 318, 324.

Respondent here has been found guilty of six separate counts of neglect. We find a pattern of neglect and of misstatements sufficient to warrant more significant discipline than the hearing and review boards have recommended. We are mindful of the fact that respondent was previously suspended for three months for misconduct very similar to what we have in this case. It is a cause for concern that the court's previous discipline of the respondent did not result in sufficient changes in his behavior to prevent these later instances of neglect. Although respondent claims to have changed the nature of his practice dramatically in order to avoid similar difficulties, the major changes appear to have occurred at the time of the earlier disciplinary proceeding, and it appears that whatever changes were made did not prevent the incidents with which we are concerned

here. Therefore, we cannot consider the changes to be a significant mitigating factor arguing in favor of a short suspension. Bearing in mind respondent's earlier discipline and the number of instances of misconduct involved here, we believe that respondent should be suspended for three years and until further order of this court. Three years is a meaningful period of time which should be long enough both to impress upon respondent the shortcomings in the manner he has conducted his practice, and to allow him to take additional steps to insure that such events will not occur again if he resumes the practice of law.

Considering all of the circumstances of this case, we regard this disposition as consistent with the discipline awarded in other cases. In *In re Chapman* (1983), 95 Ill. 2d 484, respondent was given a two-year probationary suspension for failure to prosecute an appeal. Like this respondent, Chapman had been previously suspended for three months, but that case is distinguishable, since Chapman's alcoholism was a factor in our decision. Further, we consider the pattern of neglect shown here in six separate instances plus the misstatements to be much more serious than the single instance of neglect proven in *Chapman*, and therefore to warrant a more severe sanction.

Our decision is consistent with the discipline in *In re Johnson* (1982), 93 Ill. 2d 441. There, the attorney was suspended for one year for two counts of neglect involving the mishandling of a divorce and an estate. Similarly, in *In re Levinson* (1978), 71 Ill. 2d 486, an attorney was suspended for six months for misconduct involving a single adoption proceeding. The neglect found here includes a greater number of instances, and for that reason alone, even without regard to the respondent's previous misconduct, calls for a longer suspension. The sanction imposed here is also justified by respondent's failure to satisfy the $10,000 judgment which Santillanes obtained against him, or to consummate his settlement with Mrs. Fouts by pay-

ing her the sum of $1,500 which he agreed upon.

On this record, we believe that the interests of the public, the legal profession and respondent would be best served by a suspension for three years and until further order of this court. In view of respondent's previous discipline, he will not be reinstated until this court is satisfied that he will not engage in similar misconduct in the future.

*Respondent suspended.*

JUSTICE UNDERWOOD, dissenting:

In my judgment, disbarment is the only appropriate discipline for attorneys who repeatedly engage in dishonest or deceitful behavior. This court has frequently stated that disbarment is warranted when the intentional misrepresentation which occurred here is established. (*In re Schneider* (1983), 98 Ill. 2d 215, 224; *In re Hopper* (1981), 85 Ill. 2d 318, 324; *In re Saladino* (1978), 71 Ill. 2d 263, 276.) This is especially true when, as here, the misrepresentations are directed towards the attorney's clients and accompanied by other acts of misconduct. (*In re Feldman* (1982), 89 Ill. 2d 7, 9-13; *In re Smith* (1979), 75 Ill. 2d 134, 136-42; *In re Frey* (1976), 65 Ill. 2d 130, 131-32.) The majority's suggestion that respondent's conduct was not fraudulent is clearly indefensible in light of our recent statement that fraud includes " '*** anything calculated to deceive *** whether it be by direct falsehood or by innuendo, by speech or by silence, by word of mouth or by look or gesture.' " (*In re Armentrout* (1983), 99 Ill. 2d 242, 251.) Too, the court has always considered an attorney's prior discipline for similar conduct a critical factor in its decisions to disbar. *In re Nesselson* (1969), 43 Ill. 2d 262; *In re Broverman* (1968), 40 Ill. 2d 302.

As the majority observes, this is not a case like *In re Chapman* (1983), 95 Ill. 2d 484, where an attorney was guilty of a single instance of neglect, and where alcoholism and illness were important mitigating factors. We deal here

with an attorney who was undeterred by his prior discipline, who admits to serious and repeated neglect in the handling of his clients' cases, and who has irreparably prejudiced his clients' legal rights through misrepresentations and nondisclosures. Under these circumstances I do not believe any sanction short of disbarment will adequately protect the public or maintain the integrity of the legal profession.

JUSTICE MORAN joins in this dissent.