(No. 56122.—)

*In re* MANUAL JAMES BERKOS, Attorney,
Respondent.

*Opinion filed December 17, 1982.*

David Beckerman, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

John P. Coghlan, of Chicago, for respondent.

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a two-count complaint charging the respondent in count I with neglect of a legal matter, and in count II with neglect, dishonesty, fraud, deceit, misrepresentation, and unethical, unprofes-

sional conduct. The Hearing Board concluded that the allegations of count I were established by clear and convincing evidence that the respondent neglected a legal matter entrusted to him. However, it found the evidence on the charges in count II insufficient and dismissed it. The Hearing board recommended a 60-day suspension. The Review Board agreed with the findings of the Hearing Board, but instead recommended a one-year suspension.

The facts reveal that in August of 1970, the respondent was treated for depression as a result of litigation over an unsuccessful business venture. Additional litigation was brought against him in 1971 and 1972. He testified that during this period he was frequently away from his office and his consumption of alcohol began to increase.

In May of 1972, the respondent represented Kenneth Murray in a jury trial on charges of armed robbery and aggravated assault. The jury returned a verdict of guilty, and on June 21, 1972, Murray was sentenced to a 20- to 50-year prison term. On the same day the respondent filed a notice of appeal. He later filed an amended notice of appeal, a $25 appearance fee, and a motion for release on bond pending appeal. In October of 1972, the respondent learned that the bond motion was denied.

In December 1972, the respondent's secretary removed the Murray file from the "active file" drawer and secreted it in her desk. Thereafter she intercepted all correspondence and met personally with Murray's mother whenever Mrs. Murray came to respondent's office. She received $2,000 from Mrs. Murray between January and March 1973 and placed it in respondent's bank account. Two of the receipts, totaling $1,900, contained notations that they were for Murray's appeal.

Murray sent five letters to the respondent's office in 1973 requesting an update on the status of his appeal.

The record reveals that the secretary sent a letter on respondent's stationery to Murray in April of 1973. This letter indicated that the respondent was in the process of preparing the appeal, but was still waiting for the trial transcript. The record also shows that the respondent's mental condition further deteriorated during this period. In July of 1973, the respondent testified that he saw a psychiatrist for anxiety, hopelessness, drinking, domestic problems and depression.

On November 6, 1973, the appellate court dismissed Murray's appeal for want of prosecution. A copy of the mandate of the appellate court was sent to the respondent's office on May of 1974. One year later, the respondent's physical health began to fail. He was hospitalized for chest pains in May and June of 1975. On September 10, 1975, respondent's secretary composed and sent a letter, on his stationery, to Murray falsely indicating the reasons why the appeal was dismissed. The secretary testified that she researched and quoted Illinois cases in support of the court's dismissal, and signed respondent's name.

The respondent's physical condition continued to deteriorate. He was hospitalized again for chest pains in November 1975 and April 1976. In June of 1976, the respondent had surgery to repair a cerebral aneurysm. He testified that recuperation took several months. Finally, in December of 1976 or January of 1977, the respondent's secretary for the first time told the respondent what she had done with his case. He then instructed her to turn the file over to another attorney. Subsequently, the case was assigned to the appellate defender.

The Administrator argues that the hearing and review boards' findings of neglect of a legal matter are supported by clear and convincing evidence. He points out that the respondent filed a notice of appeal, his appearance and a bond motion, and had accepted fees for

pursuing the appeal. The Administrator contends that respondent's failure to withdraw or find substitute counsel and his abandoning of the appeal resulting in its dismissal, constitute neglect of a legal matter. The Administrator asserts that the letters sent by respondent's secretary on his stationery furthered Murray's belief that this appeal was being actively handled. He concludes that the respondent is responsible for the malfeasance of his secretary.

The respondent argues that he had no knowledge of the action taken by his secretary in the Murray case, and that she acted without his authority or consent. He contends that he thought the $2,000 received from Mrs. Murray was for previous trial fees. Respondent stated that he had never prosecuted an appeal in a criminal case beyond filing a notice of appeal, and that he had informed Murray of this fact. He asserts that he thought he was being retained by Murray only to pursue the motion to set bond pending appeal. He claims that he made a mere error in judgment by his failing to see that a substitution of attorney was filed. The respondent concludes that the facts in this case do not constitute clear and convincing evidence that he neglected a legal matter.

The respondent further indicates that even assuming he neglected a legal matter in this instance, a one-year suspension under these facts is excessive. He points out the fact that he previously had never been charged with neglect of a legal matter and emphasizes his deteriorating physical and mental condition during this period.

What respondent characterizes as a mere error in judgment resulted in the dismissal of his client's appeal. Respondent, having acknowledged that he made a practice of never following through with an appeal, should have withdrawn. (See 87 Ill. 2d R. 13, Committee Comments.) He must have realized that his failure to withdraw would result in the dismissal of the appeal for want

of prosecution. Until he withdrew it, it was respondent's duty to see that his client's rights were protected. This he failed to do. Contrary to respondent's oral understanding with Murray concerning his limited representation, the actions of his secretary led Murray to believe otherwise. While his secretary's actions and his physical and mental condition may explain the respondent's actions, they do not excuse them. (*In re Simpson* (1971), 47 Ill. 2d 562.) This court has repeatedly said that "[t]he traditionally high standards of the legal profession impose upon an attorney the duty to represent a client with zeal and diligence, and *** 'neglect in the performance of an attorney's duties to a client can be sufficient to warrant disciplinary action.' " *In re Levin* (1979), 77 Ill. 2d 205, 210; *In re Chapman* (1978), 69 Ill. 2d 494, 501.

We agree with the hearing and review boards that respondent's failure to adequately supervise his employee's malfeasance and his neglect in failing to file either a withdrawal or a substitution of attorney were both shown by clear and convincing evidence and constitute neglect of a legal matter.

This court has said that "[w]hile a degree of uniformity in the application of attorney discipline is desirable, each case must still be determined on its own merits." (*In re Andros* (1976), 64 Ill. 2d 419, 425-26.) But more recently this court has emphasized a keen awareness of "the necessity for consistency in the imposition of discipline in similar cases." (*In re Porcelli* (1979), 77 Ill. 2d 473, 479.) In the case of *In re Saladino* (1978), 71 Ill. 2d 263, 275, the rationale for this consistency was stated as follows:

"Although appropriate factors may always be considered in mitigation, predictability and fairness require a degree of consistency in the selection of sanctions for similar types of misconduct. That degree of consistency can only be achieved if sanctions are based on articulated

standards of conduct. These standards must be 'derived from the underlying purposes of our disciplinary process, which are to safeguard the public, maintain the integrity of the profession, and protect the administration of justice from reproach.' (*In re Kien* (1977), 69 Ill. 2d 355, 366 (Clark, J., concurring in part and dissenting in part); *In re Nowak* (1976), 62 Ill. 2d 279, 283.)"

In *In re Chapman* (1978), 69 Ill. 2d 494, the court suspended the attorney for three months for neglect of a legal matter. He had failed to prosecute three appeals. This was mitigated by his ill health, domestic problems and prior good record. In *In re Levin* (1979), 77 Ill. 2d 205, the attorney was suspended for three months for neglect. He had delayed filing interrogatories, failed to act diligently to complete a settlement, failed to make arrangements to produce his client for a deposition, which led to dismissal of the case, and failed to file a timely motion to vacate a prior dismissal order. This was mitigated by no previous misconduct.

In selecting the appropriate sanction in this case, we note the unusual circumstances presented. The respondent was unaware of the secretary's actions in the Murray case. The facts also show a medical history of physical and mental ill health during the pendency of the appeal. Taken together, these circumstances mitigate what might otherwise have resulted in more severe disciplinary action. In our opinion, an appropriate sanction in this case is suspension for three months.

*Respondent suspended.*