(No. 65944.—)

*In re* RONALD SHERMAN SAMUELS, Attorney, Respondent.

*Opinion filed February 2, 1989.—Rehearing denied April 3, 1989.*

512

STAMOS and CALVO, JJ., took no part.

Mary K. Foster, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Ronald S. Samuels, respondent *pro se*, and Donald Hubert, all of Chicago, for respondent.

JUSTICE MILLER delivered the opinion of the court:

On July 19, 1985, the Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed an eight-count complaint charging the respondent, Ronald Sherman Samuels, with professional misconduct in his handling of various clients' cases. A panel of the Hearing Board found against respondent on seven of the eight counts and recommended that he be suspended from the practice of law for one year. The respondent filed exceptions to the Hearing Board's report and recommendation. The Review Board concurred in the Hearing Board's report and recommendation. The respondent filed exceptions with this court pursuant to Supreme Court Rule 753(e)(5) (107 Ill. 2d R. 753(e)(5)).

Respondent was licensed to practice law in this State in May 1969. From 1977 to the present, respondent has been a partner with the law firm of Washington, Kennon, Hunter & Samuels. In 1982 and 1983, five of respondent's clients, Lee Jones, Roosevelt Long, Jesse Robinson, James Ellis and Audrey Gant Holmes, filed separate complaints with the ARDC. The clients alleged that during a six-year period between 1977 and 1982, respondent had undertaken to represent them in various matters and had neglected their cases. The facts surrounding each client's complaint are set forth below.

Lee Jones was involved in an automobile accident on January 1, 1977. Thereafter Jones consulted with and retained respondent to represent him in a suit against the driver of the other car involved. Respondent filed suit on Jones' behalf in the circuit court of Will County

on December 21, 1977 (Jones v. Morris (Will Co. Cir. Ct.), No. W77—B—7216—M). While the case was pending Jones received a settlement check in the amount of $467.51 from the other driver's insurer. Respondent and Jones agreed that the settlement was inadequate and decided to continue with the lawsuit. Jones turned the check over to respondent who kept it in his file. Jones contacted respondent periodically about the status of his case and was told that the case was proceeding.

In 1979 Jones asked respondent on several occasions to dismiss the suit and to give him the settlement check, because in Jones' opinion the case was taking too long and he wanted the money. Respondent refused to turn over the check unless Jones paid him $600 for services rendered and costs. Jones declined to do this. Respondent then explained his costs and fees to Jones and convinced Jones to continue with the case. In August 1982, over four years after the suit had been filed, Jones again asked respondent about the status of his case. In response to his client's inquiry, respondent called the clerk of the court and learned that Jones' case had been dismissed the previous year. A month later, respondent informed Jones of the dismissal. Although respondent noted on Jones' file folder that he told Jones he would attempt to have the case reinstated, respondent testified that he never took any steps to reinstate or refile the case. Respondent also admitted that he never returned the check from the insurance company to Jones.

Roosevelt Long was seriously injured in a fire that occurred in his apartment on November 14, 1976. While he was in the hospital, his wife, Julia Long, consulted Mr. Hunter, a partner in respondent's law firm, about filing a suit against Wallace Reid, Jr., one of the owners of the apartment building, and Home Investment Company, the management company. Mr. Hunter died in Feb-

ruary 1977. The Longs then consulted with and retained respondent to handle the matter.

Wallace Reid died in September 1977. Mrs. Long telephoned respondent's firm and left a message for respondent reporting that Reid had died. Respondent makes no claim that he did not receive the message concerning Reid's death. Reid's estate was admitted to probate on October 14, 1977 (*In re* Estate of Wallace Reid, Jr. (Cook Co. Cir. Ct.), No. 77—P—8222), at which time letters of office were issued. For three consecutive weeks in October and November 1977, the Chicago Daily Law Bulletin published the notice of death of Wallace Reid, stating that claims not filed within six months after the issuance of letters would be time-barred as to the inventoried estate. On March 3, 1978, the executor submitted an inventory of the estate listing its assets in excess of $370,000.

On August 1, 1978, respondent filed a $1 million personal injury suit on Long's behalf in the law division of the circuit court of Cook County naming Home Investment Company and Reid's estate as joint defendants. (Long v. Home Investment Company and Estate of Wallace Reid by Heritage Standard Bank, Executor (Cook Co. Cir. Ct.), No. 78—L—15340.) Two days later, on August 3, 1978, over nine months after the issuance of letters, respondent filed a claim against the estate. The lawsuit was dismissed for want of prosecution on August 13, 1981, when respondent failed to appear at a court call, but was refiled in July 1982 (No. 82—L—14197). Reid's estate was closed on October 30, 1981, after Long's suit against the estate had been dismissed and before it was refiled.

Throughout this period, Long made numerous attempts to contact respondent by telephone and wrote to respondent on several occasions about the matter. Respondent met with the Longs on September 17, 1982. At

this meeting, respondent told the Longs that he had been unsuccessful in locating defendant Home Investment. Respondent further informed the Longs that if he was unable to find that defendant in the near future he would not pursue the case.

Dissatisfied with respondent's handling of his case, Long retained another attorney, and respondent withdrew from the matter in February 1983. In June 1983, the court granted the motion of the estate's former executor to dismiss it as a party to the personal injury action, leaving only Home Investment Company as a defendant in the tort case. The former executor's motion had asserted that the executor could no longer be sued since Long's claim against the estate had not been timely filed and the estate was properly closed. Long's new attorney was successful in obtaining a $450,000 judgment against Home Investment on Long's behalf. However, because Long's new attorney was unable to discover any assets of Reid's estate which had not been included in the inventory, Long's petition to reopen the estate was denied on the grounds that his claim had not been filed within six months of the issuance of letters as required by section 18—12 of the Probate Act of 1975 (Ill. Rev. Stat. 1977, ch. 110½, par. 18—12). No evidence was presented that Long has been able to collect any portion of the $450,000 judgment against Home Investment. From the record it appears that the only money Long received as a result of the suit was $88,260 in settlement of a legal malpractice action against respondent and his firm.

Another of respondent's clients, Jesse Robinson, was transferred from his position as an electrical worker at the Chicago Transit Authority (CTA) to that of a ticket agent on August 16, 1978. Robinson subsequently filed complaints, with the Illinois Fair Employment Practices Commission (FEPC), regarding the transfer against both

his employer, the CTA, and his union, the International Brotherhood of Electrical Workers (IBEW). Robinson retained respondent and paid him $250 to represent him at the FEPC fact-finding hearings on the complaints and to advise him of his legal options. After adverse initial determinations, respondent filed a request for reconsideration of the CTA complaint with the FEPC. Respondent, however, did not request the FEPC to reconsider the IBEW complaint. In early 1980, the FEPC rendered a final decision on both complaints adverse to Robinson.

Robinson then retained respondent to prosecute his actions against the CTA and IBEW in Federal court. Respondent explained to Robinson that the FEPC would refer the charge to the Equal Employment Opportunity Commission (EEOC) and the EEOC would issue a right-to-sue letter. Respondent told Robinson that once he received the letter he would file the lawsuit.

Between March 1980 and November or December 1980, Robinson paid respondent $1,500 to represent him. Although the EEOC issued the right-to-sue letter in May 1980, respondent claimed throughout the disciplinary proceedings that he was unaware of this fact. Respondent's claim that he did not know of the right-to-sue letter was substantiated by the Robinson case file folder, on which respondent noted in August 1980 that there was no right-to-sue letter and that no case was pending. Respondent, however, told Robinson in August 1980 that the lawsuit was proceeding and further informed him in September 1980 that he had received the right-to-sue letter. Respondent and Robinson again talked in November 1980. At that time, respondent told Robinson that the lawsuit would take a while. After Robinson made the final payment on the retainer, respondent told him that suit had been filed and that they were waiting for a court date. Respondent apparently did nothing after receiving his fee, and Robinson's action was never filed. In

December 1987, this court allowed respondent's motion to supplement the record with the right-to-sue letter which respondent found in his files in May 1987.

Another client, James Ellis, was discharged from his job at W.R. Brown Company, in October 1981. On November 5, 1981, Ellis filed a complaint with the EEOC contesting the discharge. On December 21, 1981, Ellis consulted with and retained respondent to represent him, and at that time paid respondent $750 towards a $3,500 retainer. The EEOC issued a right-to-sue letter on January 29, 1982. Respondent did not file suit within 90 days of receiving the letter, as required by title VII (42 U.S.C. §2000e—5(f)(1) (1982)). Although respondent did file a complaint in Federal district court on Ellis' behalf on May 4, 1982 (Ellis v. W.R. Brown Co. (N.D. Ill.), No. 82—C—2771), that portion of the suit which was based on title VII (42 U.S.C. §2000e *et seq.* (1982)) was found to be time-barred because it was not filed within 90 days. The remaining portions of the suit were dismissed, in part, because respondent failed to comply with discovery. This failure also resulted in orders assessing Ellis with $554.10 in costs and attorney fees. Respondent testified that he believed that he paid part of this amount himself and that he told Ellis to pay the rest.

The final client whose case respondent was alleged to have neglected was Audrey Gant Holmes. Holmes was named as the executrix of her father's estate. On April 8, 1981, Holmes retained respondent and paid him $1,400 to represent her as executrix in the probate proceedings. To satisfy the terms of the will it became necessary to sell the decedent's real estate. Problems developed in disposing of the property and the complications resulted in delay in filing the final accounting. One of the parties named in the will complained to the ARDC

about the delays that had occurred. The estate was finally closed on November 19, 1985.

After investigating the complaints, the Administrator filed an eight-count complaint against respondent in July 1985. The Administrator alleged that the conduct charged in each count violated Rule 6—101(a)(3) (neglect of a legal matter entrusted to him); Rule 7—101(a)(l) (intentionally failing to seek the lawful objectives of a client); Rule 7—101(a)(2) (intentionally failing to carry out a contract of employment); and Rule 7—101(a)(3) (intentionally causing damage to a client). In addition, count IV charged that respondent's conduct as to Jesse Robinson also violated Rule 2—106(c)(1) (failure to reduce a contingent-fee agreement to writing) and Rule 1—102(a)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation). Counts VI and VII charged that respondent's conduct as to James Ellis also violated Rule 1—102(a)(5) (engaging in conduct prejudicial to the administration of justice); Rule 7—106(c)(7) (intentionally or habitually violating an established rule of procedure); and Rule 6—101(a)(2) (handling a matter without preparation adequate in the circumstances). 107 Ill. 2d R. 1—101 et seq.; see also Illinois Code of Professional Responsibility (rev. 1977).

Prior to his hearing, respondent filed numerous motions with the Hearing Board. Among them, in September 1985, respondent filed a motion to dismiss the complaint in which he claimed the charges against him were barred by the statute of limitations governing personal injury actions. (Ill. Rev. Stat. 1985, ch. 110, par. 13—202.) Then in January 1986, respondent moved for judgment on the pleadings arguing primarily that (1) the charges against him constituted an *ex post facto* application of the disciplinary rules, and (2) the complaint was deficient in that it failed to plead the elements of a legal malpractice action. Both motions were denied. After the

motions were denied, one member of the panel assigned to hear respondent's case became involved in litigation with respondent's law firm. As a result, another member of the Hearing Board was assigned as a replacement in February 1986.

In August 1986, a panel of the Hearing Board conducted the hearing. Based on the evidence presented, the Hearing Board concluded that the evidence clearly and convincingly showed that respondent had neglected the cases of Lee Jones, Roosevelt Long, Jesse Robinson and James Ellis in violation of Rule 6—101(a)(3). The Board found that respondent's defense to the Administrator's case consisted mainly of argument, unsupported by testimony or evidence. The Hearing Board then stated that a pattern of consistent neglect was shown and recommended that respondent be suspended from the practice of law for one year. The Hearing Board found that no ethical misconduct had occurred in the case of Audrey Gant Holmes and made no findings of misconduct with respect to the other rules respondent was charged with violating.

Respondent then filed exceptions with the Review Board to the Hearing Board's report; the Administrator filed no exceptions. The Review Board concurred in the Hearing Board's findings of fact and conclusions of law. A majority of the Review Board also concurred in the recommended one-year suspension. Two members of the Board believed that the misconduct warranted a two-year suspension. Respondent filed in this court exceptions to the Review Board's report and recommendations. The Administrator, however, has not filed exceptions to the Review Board's report. Thus, only the alleged violations of Rule 6—101(a)(3) regarding clients Jones, Long, Robinson and Ellis are before the court.

Respondent now raises numerous arguments challenging the validity of the Hearing and Review Boards'

determinations. Before addressing these contentions individually, we believe it appropriate in this case to make some general observations about respondent's arguments before this court. Here, as throughout the disciplinary proceedings, respondent has, for the most part, avoided the merits of the Administrator's case. Moreover, several of respondent's arguments are either totally unsupported or only minimally supported by citation of authority. One of respondent's "arguments" consists of a string of quotations from various sources unaccompanied by any explanation as to how the statements are applicable to his case. Finally, we note that the authority respondent does provide is frequently lacking in relevance. In spite of these deficiencies, we have examined each of respondent's claims and find them all without merit.

First, respondent contends that, because the conduct in question took place more than two years before the Administrator filed the complaint, it is barred by the statute of limitations contained in section 13—202 of the Code of Civil Procedure (Ill. Rev. Stat. 1985, ch. 110, par. 13—202). Respondent claims that by looking at the plain meaning of the language of the statute, it becomes apparent that the statute controls attorney discipline proceedings.

By its language, this statute governs "actions for damages." Attorney discipline proceedings are not civil actions for damages, and the statute relied on by respondent has no application to this case. Attorney discipline proceedings are *sui generis* resulting from this court's inherent power to regulate the practice of law. As such, they are neither civil nor criminal in nature, and are governed solely by this court's rules and decisions. See *In re Mitan* (1987), 119 Ill. 2d 229, 246; *In re Loss* (1987), 119 Ill. 2d 186, 192-93; see also *In re Application of Day* (1899), 181 Ill. 73.

In its decision in *In re Teichner* (1979), 75 Ill. 2d 88, 95, this court stated that "[t]here is no statute of limitations governing our disciplinary proceedings," and that only delay which can be shown to "have prejudiced the respondent's ability to present a substantial defense" will bar such proceedings. Respondent argues that the preamble to the ARDC rules, which states that it is the Commission's policy to handle disciplinary matters as expeditiously as possible, overruled this court's decision in *Teichner*, and that the statute of limitations now applies to disciplinary proceedings. As an agency of this court, the ARDC is empowered to make rules that are not inconsistent with the rules of this court (107 Ill. 2d R. 751(e)). The rules of the ARDC, however, do not overrule this court's decisions. Respondent has not argued before this court that his case was prejudiced by any delay in the proceedings, and we reject his contention that the Administrator's complaint was barred by time.

Second, respondent argues that he cannot be disciplined for conduct occurring prior to this court's adoption of the Illinois Code of Professional Responsibility (see 79 Ill. 2d R. 1—101 *et seq.*) on July 1, 1980. Respondent contends that to do so would violate both the Federal and State constitutional prohibitions against *ex post facto* laws. U.S. Const., art. I, §10, cl. 1; Ill. Const. 1970, art. I, §16.

The *ex post facto* clauses prevent this State from enacting any law " 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " (*Weaver v. Graham* (1981), 450 U.S. 24, 28, 67 L. Ed. 2d 17, 22, 101 S. Ct. 960, 964, quoting *Cummings v. Missouri* (1867), 71 U.S. (4 Wall.) 277, 325-26, 18 L. Ed. 356, 364; see also *Coles v. County of Madison* (1826), 1 Ill. 154, 155.) The Federal and Illinois *ex post facto* clauses, however, apply only to retroactive mea-

sures which are either criminal or penal in nature. *Calder v. Bull* (1798), 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650; *In re Marriage of Semmler* (1985), 107 Ill. 2d 130, 135.

In Illinois, attorney discipline proceedings are neither criminal in nature nor intended to punish. As the court stated in *In re March* (1978), 71 Ill. 2d 382, 395:

" 'The first purpose of a proceeding to discipline a member of the bar is to protect members of the public, to maintain the integrity of the legal profession and to safeguard the administration of justice from reproach.' [Citations.] 'Punishment is not the object. The object of such an inquiry is to determine whether the attorney is a proper person to be permitted to practice his profession.' "

Therefore, because the purpose of attorney discipline is not penal, the prohibition against *ex post facto* laws has no application to such proceedings. See, *e.g.*, *In re Craven* (1930), 178 La. 372, 151 So. 625; *Braverman v. Bar Association* (1956), 209 Md. 328, 121 A.2d 473; *In re Sparrow* (1935), 338 Mo. 203, 90 S.W. 401; *In re Leifer* (1978), 63 A.D.2d 174, 407 N.Y.S.2d 1; *Norfolk & Portsmouth Bar Association v. Drewry* (1934), 161 Va. 833, 172 S.E. 282; *In re Brown* (W. Va. 1973), 197 S.E.2d 814; *In re Rabideau* (1981), 102 Wis. 2d 16, 306 N.W.2d 1.

Even if the *ex post facto* clauses were applicable to disciplinary proceedings, respondent's argument would still fail. Prior to this court's formal adoption of attorney discipline rules, this court found that the Illinois State Bar Association's Code of Professional Responsibility constituted a safe guide for professional conduct, and that an attorney could be disciplined for not observing its provisions. (*In re Taylor* (1977), 66 Ill. 2d 567, 571; *In re Krasher* (1965), 32 Ill. 2d 121, 129.) That code states that "[a] lawyer shall not *** [n]eglect a legal matter entrusted to him." (Illinois Code of Professional

Responsibility, DR 6—101(A)(3) (rev. 1977).) In this case, the Hearing and Review Boards concluded that respondent had neglected four legal matters entrusted to him. Because attorneys were prohibited from and suspended for such conduct prior to 1980 (see *In re Taylor* (1977), 66 Ill. 2d 567), respondent's contention that he is now being disciplined for conduct that was proper when it occurred is without merit.

Third, in which respondent apparently confuses burden of proof with standard of proof, respondent asserts that the Hearing Board applied the wrong standard of proof in deciding the case by making him prove that he was not guilty. A review of the Hearing Board's report shows that the Hearing Board employed the correct standard when it determined that the Administrator proved respondent guilty of neglect by clear and convincing evidence. (107 Ill. 2d R. 753(c)(6).) Moreover, the Hearing Board merely stated that respondent's failure to adduce evidence in his defense caused the proof of neglect to go unrebutted; it did not indicate that respondent bore the burden of proof.

Fourth, respondent argues that, because one of the panel members developed a conflict of interest with respondent's firm, the panel's rulings on his prehearing motions were tainted. For this reason, respondent contends that the hearing panel should have reviewed all prior rulings on every motion filed by respondent. The only motions which respondent now argues were wrongly decided, however, concerned (1) the statute of limitations, (2) the *ex post facto* application of the rules, and (3) the Administrator's failure to plead the elements of a civil malpractice action. Because, if for no other reasons, we have already rejected respondent's arguments on the first two issues and will likewise dispose of the third, we find respondent's argument to be without merit.

Fifth, respondent contends that the Administrator's evidence was insufficient to prove that he neglected any of the matters entrusted to him by Jones, Long, Robinson or Ellis. Regarding Lee Jones' case, respondent claims that he was not proved guilty of misconduct in that (1) the Administrator failed to plead and prove the elements of a legal malpractice action and (2) Jones asked him "to drop" the case. Both theories are untenable.

In support of his first argument, respondent has relied exclusively on inapplicable malpractice cases. In accordance with Supreme Court Rule 753(b) (107 Ill. 2d R. 753(b)), it is necessary only that the Administrator allege and prove facts constituting a violation of the Illinois Code of Professional Responsibility, not those required for a civil negligence action. (See *In re Mason* (1988), 122 Ill. 2d 163, 169.) As to respondent's second claim, Lee Jones testified that he and respondent never agreed that respondent would discontinue work on the case. While Jones did say that he had told respondent that he wanted to accept the insurance check and to forget the lawsuit, respondent refused to turn over the check and convinced Jones to continue with the case. The Hearing Board found that Jones had never authorized respondent not to pursue his claim. In considering any challenge to the factual findings of the hearing panel, this court has stated that because the hearing panel is able to see the witnesses, observe their demeanor, judge their credibility and weigh conflicting testimony, the factual findings of the hearing panel are entitled to the same deference as the findings of any initial trier of fact. (See, *e.g., In re Anglin* (1988), 122 Ill. 2d 531, 538; *In re Wigoda* (1979), 77 Ill. 2d 154, 158-59.) The hearing panel's finding on the Jones matter is not contrary to the manifest weight of the evidence and we see no reason to disturb that finding.

Next, respondent contends that the evidence concerning the Roosevelt Long matter was insufficient to prove respondent's neglect of the case since, according to respondent, it showed that (1) respondent was only a supervising attorney and that he had entrusted the Long case to a subordinate and (2) the Longs eventually obtained a $450,000 judgment.

We need not decide here whether respondent's professional responsibility to Long would have been different had respondent been responsible for supervising a subordinate attorney rather than handling the case himself. (See *In re Weinberg* (1988), 119 Ill. 2d 309, 315.) The Hearing Board found, and the record supports the finding, that respondent was personally responsible for Long's case. Both Mr. and Mrs. Long testified that it was respondent to whom they entrusted their case. As we have said before, we give substantial deference to the hearing panel's findings of fact where witnesses' credibility is at issue.

Respondent's second contention fails as well. Although another attorney ultimately obtained a substantial judgment for Long, respondent failed to file a probate claim against the estate of the deceased defendant, Wallace Reid, within the statutory period. Moreover, respondent did not offer any evidence to justify his delay. Respondent's late filing foreclosed Long from a possible source of collecting the judgment later obtained by another attorney and constituted neglect of the matter while respondent represented Long. Respondent's neglect of the Long case cannot be excused by the later success of another attorney. Moreover, we note that no evidence has been presented to indicate that Long has collected on the judgment.

Respondent likewise argues that the evidence does not support the finding that he was guilty of neglecting Jesse Robinson's claims against the CTA and IBEW. We

disagree. The testimony and documentary evidence show that respondent agreed to represent Mr. Robinson in both claims, that he was paid $1,500 to do so, yet, after receiving this amount, he did nothing to pursue the matters. In his brief, respondent insists that he never agreed to represent Mr. Robinson against the IBEW. This argument fails for two reasons. Not only was this factual issue resolved against respondent by the Hearing Board panel, a finding supported by the record, but the argument also does nothing to explain why respondent failed to pursue the CTA claim.

Regarding the finding of neglect in the Ellis matter, respondent argues that the dismissal of, and subsequent bar to, a portion of Ellis' claim was unimportant because they could prosecute the same claim under another statute. Neglect which causes delay and forecloses a possible basis for recovery is still neglect, despite the fact that a client might possibly recover under some other theory. Respondent's failure to proceed under the statute he initially selected was not shown to be a tactical choice between various methods of suit or theories of recovery, but was instead the result of respondent's inattention to his client's case.

Respondent argues further that he was not guilty of neglecting the Ellis matter since it was Ellis' fault that discovery requests were not answered. Respondent claims that Ellis failed to provide him with necessary information on six or seven occasions; Ellis, however, testified that he always gave respondent the information and documents requested. The Hearing Board found Ellis' testimony to be credible on this point and rejected respondent's version of events. Again, we find no reason to disturb the Board's determination concerning the witness' credibility.

Finally, respondent argues that a one-year suspension is an unduly harsh sanction for his actions. In determin-

ing the appropriate discipline in a given case, we must consider the nature of the violations, as well as the circumstances surrounding the misconduct. Thus we begin by restating the proposition that "neglect of a legal matter is in itself sufficient ground for suspension" (*In re Houdek* (1986), 113 Ill. 2d 323, 327), and by recognizing that suspension is often the sanction imposed (see, *e.g.*, *In re Harth* (1988), 125 Ill. 2d 281; *In re Guilford* (1987), 115 Ill. 2d 495; *In re Houdek* (1986), 113 Ill. 2d 323; *In re Johnson* (1982), 93 Ill. 2d 441; *In re Berkos* (1982), 93 Ill. 2d 408; *In re Levin* (1979), 77 Ill. 2d 205; *In re Levinson* (1978), 71 Ill. 2d 486; *In re Chapman* (1978), 69 Ill. 2d 494; *In re Taylor* (1977), 66 Ill. 2d 567; but see *In re Kink* (1982), 92 Ill. 2d 293; *In re Ahern* (1961), 23 Ill. 2d 69). In each case where an attorney has been suspended for neglect of a legal matter, the length of the suspension has depended on the aggravating and mitigating factors.

In mitigation respondent argues that none of his clients were injured by his conduct. The facts of the case simply do not support this contention. Each of the four clients was prejudiced as a result of respondent's inattention. Jones' personal injury claim is now barred due to respondent's failure to refile it. Long's case was substantially delayed and he was foreclosed from a possible source of recovery on a $450,000 judgment. Although respondent compensated Long in the sum of $88,260, this amount is only a fraction of the judgment amount. Robinson, after paying respondent $1,500, lost the right to pursue his claim against the CTA. Although in December 1986 Robinson, with the aid of another attorney, filed suit in Federal court against the union, this action was delayed over six years because of respondent's neglect. Finally, Ellis, after paying respondent a substantial retainer, lost the right to pursue his title VII claim.

In addition, Ellis was assessed attorney fees, only a portion of which were paid by respondent.

Respondent next suggests that, because he was found guilty of neglecting only four cases out of the 14,000 he claims to have supervised during the six-year period in question, he is undeserving of suspension for the four cases he neglected. Accepting as true respondent's assertion that he supervised or handled 14,000 cases between 1977 and 1982, we nevertheless find his argument unpersuasive.

Respondent's argument asks that we infer that his other clients were well-served, a question not before us. Assuming for the moment that the inference might otherwise be warranted, we note that at oral argument before the court, respondent stated:

"The reason we can have 14,000 cases is because the cases are $600 here, $300 here. You cannot proceed in those kinds of cases in the same way that you can if you got a $150,000 case. If you are going to do justice by your client, you have got to do the best you can, make your adjustments and move on."

If respondent was willing to neglect Long's personal injury claim in which a $450,000 judgment was obtained by his successor attorney, one might question whether the $300 and $600 cases, referred to by respondent, received more careful attention. We also find troublesome the implication in respondent's remarks that there is some cut-rate version of our rules which permits an attorney to agree to represent a client in a matter and then "move on" when the case fails to meet his or her expectation.

Respondent further cites in mitigation several *pro bono* and professional activities. While we do consider participation in such activities in mitigation (*In re Lenz* (1985), 108 Ill. 2d 445, 454), we also note that an attorney's primary responsibility is to his client, and that in-

volvement in professional and public service organizations is no substitute for the conscientious and zealous representation of one's clients. (See *In re Weston* (1982), 92 Ill. 2d 431, 438.) Lastly, respondent points out that he has not been charged with previous misconduct, and that no corrupt motive or moral turpitude was involved in the present cases.

In aggravation, we find that during a six-year period respondent undertook to represent four clients and subsequently neglected the matters that they entrusted to him. A pattern of neglect weighs heavily in favor of a period of suspension. (See, *e.g., In re Levin* (1984), 101 Ill. 2d 535, 541-42; *In re Taylor* (1977), 66 Ill. 2d 567, 573.) Respondent's conduct was also aggravated by his repeated misrepresentations to his clients about the status of their cases. See *In re Houdek* (1986), 113 Ill. 2d 323, 327; *In re Levinson* (1978), 71 Ill. 2d 486, 490.

Finally, respondent's lack of cooperation in the disciplinary proceedings indicates substantial discipline is warranted. Prior to the hearing, respondent repeatedly filed frivolous requests and meritless motions which appear solely calculated to delay the proceedings. At the hearing, respondent insisted on arguing irrelevant issues and questioning his clients' veracity and sanity while failing to support his accusations with any credible evidence. Respondent, to this day, continues to belittle his clients and their cases, and to blame those who worked for him for the neglect. Respondent still believes he acted properly in each of the four cases, which does not inspire confidence that respondent is ready to recognize his duty as an attorney and to conform his conduct to that required by the profession.

While this court strives for consistency in the imposition of discipline (*In re Berkos* (1982), 93 Ill. 2d 408, 413), we recognize that, given the unique facts of each case, we will rarely confront a matter which is precisely

analogous to a prior decision. With this limitation in mind, we have examined our prior decisions involving attorney neglect and find that *In re Taylor* (1977), 66 Ill. 2d 567, provides a close analogy to the present case. There, on three occasions after agreeing to represent clients and accepting money for fees or costs, the attorney neglected to perform or complete legal services and became inaccessible to his clients. The court found, however, that the attorney did not act out of corrupt or dishonest motives and suspended him for one year.

Having considered the circumstances of this case, as well as our previous decisions, we accept the recommendation of the Hearing and Review Boards. Respondent is suspended from the practice of law for a period of one year.

*Respondent suspended.*

STAMOS and CALVO, JJ., took no part in the consideration or decision of this case.